IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-01343-SKC-TPO

MARQUIS DOMINICK, *et al.*,

       Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, *et al.*,

       Defendants.

---

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT (DKTS. 113 & 114)**

---

The 13 Plaintiffs allege Defendants The City and County of Denver ("Denver"), Patrick Phelan ("Phelan"), and various John and Jane Does ("Does"), violated their First, Fourth, and Fourteenth Amendment constitutional rights during the George Floyd protests in May 2020 because Denver police officers fired rubber bullets, pepper balls, tear gas cannisters, and other non-lethal weapons at them and other peaceful protesters. The Court now considers the parties' cross-motions for summary judgment, which are fully briefed. *See* Dkts. 113 (Defendants' motion), 129 (Plaintiffs' response), and 141 (Defendants' reply); Dkts 114 (Plaintiffs' motion), 129 (Defendants' response), and 141 (Plaintiffs' reply); *see also* party exhibits filed at Dkts. 115, 117-130, and 138.

1

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States. The Court has reviewed the briefing, the evidence, the relevant law, and the entire case file. No hearing is necessary. For the following reasons, Defendants' and Plaintiffs' respective Motions are denied.

## BACKGROUND

The 13 Plaintiffs are Marquis Dominick, Brett Rios, Alex Hickman, Tashari Sayers, Raymond Schwab, Jesse Friedman, Susan McKillips, Ryan Kehoe, Adam Bentch, Patricia Koo, Isis Usborne, Kristen Klotzer, and Joe Szuswalak. They bring the following claims against Defendants:

| CLAIM | PLAINTIFFS | DEFENDANTS |
| --- | --- | --- |
| **First Claim** – 42 U.S.C. § 1983 – Fourth Amendment Violation – Excessive Force | All Plaintiffs | All Defendants |
| **Second Claim** – 42 U.S.C. § 1983 – First Amendment Violation – Freedom of Speech and Assembly | All Plaintiffs except Hickman | All Defendants |
| **Third Claim** – 42 U.S.C. § 1983 – First Amendment Violation – Retaliation | All Plaintiffs except Hickman | All Defendants |
| **Fourth Claim** – 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Procedural Due Process | All Plaintiffs except Hickman | All Defendants |

2

| CLAIM | PLAINTIFFS | DEFENDANTS |
|---|---|---|
| **Fifth Claim** – 42 U.S.C. § 1983 – Fourth Amendment Violation – Failure to Train or Supervise | All Plaintiffs | Denver<br>Phelan |
| **Sixth Claim** – 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Equal Protection | Hickman | Does |
| **Seventh Claim** – 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Equal Protection – Selective Enforcement | Klotzer<br>Sayers | Denver<br>Does |

Defendants' motion seeks summary judgment on all Plaintiffs' claims. Generally, their motion argues: no Denver police officer violated Plaintiffs' constitutional rights because their use of non-lethal weapons does not constitute a seizure under the Fourth Amendment; Plaintiffs were violating a lawfully enacted curfew; and any police action against Plaintiffs was motivated by Denver's interest in enforcing the curfew rather than Plaintiffs' exercise of their First Amendment rights. Denver further contends there are no disputed issues of material fact regarding its municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). And Defendant Phelan further argues he is entitled to qualified immunity.

Plaintiffs' motion, styled as a partial motion, is not exactly a Rule 56 motion. That's because it seeks a determination of law that Denver is subject to issue preclusion concerning its alleged failure to train its officers, based on the jury verdict

3

rendered against Denver in *Epps, et al. v. City and County of Denver, et al.*, No. 20-cv-1878-RBJ (D. Colo.). Dkt. 114, p.1.

"There is no procedural rule providing for a 'motion for determination of law' as such. The motion[ ] could be viewed as [a] motion[ ] for partial summary judgment, or a motion[ ] for a partial declaratory judgment, or a motion[ ] in limine." *Lebsack v. Rios*, No. 16-CV-02356-RBJ, 2017 WL 5444568, at *1 (D. Colo. Nov. 14, 2017); *see also Cole-Layer-Trumble Co. v. Bd. of Cnty. Comm'rs of Cherokee Cnty.*, No. CIV. A. 89-4077-S, 1991 WL 74251, at *3 n.1 (D. Kan. Apr. 11, 1991) ("The court notes that the Federal Rules of Civil Procedure do not provide for a 'motion for determination of questions of law.' The court has seen these motions before, which generally serve as a means of filing a summary judgment motion beyond the deadlines established for dispositive motions."). However, because Plaintiffs timely filed their partial motion by the dispositive motions deadline, and because both parties have treated it as a Rule 56 motion, the Court entertains the partial motion on its merits.

## STANDARD OF REVIEW

### 1. Summary Judgment

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth

4

of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The court must also consider the undisputed material facts in the light most favorable to the non-moving party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

### 2. Issue Preclusion

"[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S.*

5

*Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (citation omitted). It is designed to prevent parties from wasting time and resources and to discourage losing parties from shopping around for a different court. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015). In general, issue preclusion applies when: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party to, or in privity with, a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Park Lake*, 378 F.3d at 1136.

## ANALYSIS

1. **Defendants' Motion**

    a. **Denver's Arguments**

Notwithstanding the numerosity of parties to this case, the summary judgment record is absurdly voluminous as concerns Defendants' motion. The parties submitted over 4,000 pages of record materials *in addition* to their each submitting various videos and photographs conventionally for the Court's perusal, all as pertains to Defendants' motion alone. The abundance of record evidence they submitted appears an effort to try this case on the papers, which the Court declines to do. *See Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*, No. 06-CV-1164, 2010 WL 3907489, at *1 (N.D.N.Y. Sept. 30, 2010) ("The parties have submitted thousands of pages of

argument, exhibits, and transcripts in an effort to seemingly try their cases on the papers. The Court declines that invitation."). "This Court has gone over the Rule 56 motion with care . . . . There surely appear to be enough potential issues of material fact [buried in the 4,000-plus pages of materials] to indicate that prudence calls for a trial . . . ." *Mussetter v. Lyke*, No. 96 C 7657, 1998 WL 45015, at *1 (N.D. Ill. Jan. 29, 1998).

For example, one of Denver's first arguments seeks summary judgment on Plaintiffs' First Claim (under 42 U.S.C. § 1983), which alleges a violation of Plaintiff Friedman's Fourth Amendment rights based on excessive force, because it claims the undisputed material facts show no constitutional violation occurred. Dkt. 113, pp.5, 6. Denver argues exposure to chemical agents is not a seizure under the Fourth Amendment, citing *Cousik v. Denver. et al.*, 1:22-cv-01213-NYW-KAS, 2024 WL 896755 at *9 (D. Colo. Mar. 1. 2024). Dkt. 113, p.4. And even if a seizure had occurred, the seizure was reasonable under the totality of the circumstances because, Denver implies, Friedman was near "a large group of violent protestors throwing rocks and other projectiles at police." *Id.* at pp.5, 6 (citing, *inter alia, Graham v. Connor*, 490 U.S. 386, 396 (1989) (identifying factors to consider when examining the totality of the circumstances)).

What Denver ignores is that, with due respect to the *Cousik* court with whom this Court disagrees, this Court has already previously held in a similar case against Denver that it "can discern no logical reason why the use of chemical agents might

7

constitute a use of physical force under the law when used on incarcerated persons, but not when used on peaceful protestors in the context alleged here." *Bjelland v. City & Cnty. of Denver*, No. 1:22-cv-01338-SKC-SBP, 2024 WL 4165428, at *4 (D. Colo. Sept. 12, 2024) (citation omitted). This Court went on to conclude that restraining peaceful protestors with chemical agents could constitute a seizure within the meaning of the Fourth Amendment. *Id.* at *7 ("[T]here is evidence that nearly all the Plaintiffs came into physical contact with chemical agents that effectively restrained their freedom of movement and constituted more than a minimal intrusion on their bodily integrity. . . . [T]he Court is satisfied there is sufficient evidence for a reasonable jury to conclude Plaintiffs were seized within the meaning of the Fourth Amendment."). The same conclusion applies here.

And concerning whether the seizure of Friedman was reasonable, Defendants appear to cite only evidence of violence perpetrated by other individuals among the protestors, but not to any specific evidence that Friedman was violent. *See* Dkt. 137-1, p.40, ¶79; p.41, ¶82; p.42, ¶85. Friedman further contends the crowd he was in was peaceful prior to Denver officers' use of force against the crowd. *See* Dkt. 137-1, p.69, ¶26. Taking the evidence in the light most favorable to Plaintiffs, a material factual dispute exists over whether the protests were peaceful or whether Friedman was violent. Other material factual disputes include, if the protests later became violent, when; when did the officers deploy less-than-lethal weapons; who did they deploy those weapons against; etc.

8

In short, Denver is not entitled to summary judgment on Friedman's First Claim. Nor is Denver entitled to summary judgment on the rest of Plaintiffs' claims given the material factual disputes emanating from the paper trial the parties submitted.

As another judge in this District put it:

> In short, this Court is not prepared on the present record to resolve all issues in favor of [Defendant Denver]. * * * It seems to be more and more in vogue these days to try cases on paper. This is not a case that lends itself to that. I want to see live witnesses, assess their credibility, and consider each item of evidence in the context of the whole picture. To do that we are going to have to have an old fashioned trial.

*F.T.C. v. Dalbey*, No. 11-CV-1396-RBJ-KLM, 2013 WL 934986, at *1–2 (D. Colo. Mar. 11, 2013). The Court denies Defendants' motion insofar as it pertains to Denver.

### b. Phelan's Qualified Immunity Argument

Phelan claims qualified immunity arguing Plaintiffs cannot prove any underlying constitutional violation; or that Phelan had supervisory liability for a violation; or that Plaintiffs' rights were "clearly established" at the time of the alleged violations. Qualified immunity shields individual defendants in Section 1983 actions unless their conduct was unreasonable based on clearly established law. *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). The Court has discretion to consider these prongs

9

in any order. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Prior to the burden shifting to a plaintiff, however, it is the defendant's obligation to *adequately* present or raise its qualified immunity defense. *Est. of Ward by & through Stamp v. Pueblo Cnty.*, No. 1:23-cv-00473-CNS-MDB, 2023 WL 4744928, at *8–9 (D. Colo. July 25, 2023) (defendants failed to adequately raise the defense); *see also Halik v. Darbyshire*, No. 1:20-cv-01643-PAB-KMT, 2021 WL 4305011, at *5 (D. Colo. Sept. 22, 2021) (same). Only after "adequately presenting" the defense does the burden shift.

> The procedure for analyzing a claim of qualified immunity is as follows. First, the defendant must raise the defense of qualified immunity. *Once the defendant has adequately raised the defense*, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute.

*Woodward v. City of Worland*, 977 F.2d 1392, 1396–97 (10th Cir. 1992) (citations omitted) (emphasis added).

The court in *Estate of Ward* found defendants' three-paragraph argument that merely recited the elements of a qualified immunity claim and with no supporting argument failed to "adequately present" the defense. *Est. of Ward*, 2023 WL 4744928, at *8. Similarly, the *Halik* court found "defendants made no attempt to argue *why*

10

qualified immunity applies in this case." *Halik*, 2021 WL 4305011, at *5 (emphasis added).

Phelan's raising of the defense is similarly inadequate. In the 10 total paragraphs that discuss qualified immunity in his motion, six recite the law or legal standards, two are summary or conclusory paragraphs, and only two others address any alleged facts or purported evidence. *See* Dkt. 113, pp.26-31. Aside from a single citation to Defendants' statement of material facts that arguably supports Plaintiffs' position that Phelan directed the use of less than lethal weapons against at least some Plaintiffs (*id*. at p.27), Phelan cites nothing from the over 2,100 pages of evidence he submitted (in addition to his conventionally submitted materials) in support of his raising the qualified immunity defense. *See* Dkt. 113, pp.26-31.

Instead, he merely asserts the defense and argues no evidence exists:

> First, as set forth above, no DPD officer violated Plaintiffs' First, Fourth, or Fourteenth Amendment rights. Because the officers did not violate their rights, Cmdr. Phelan did cause [sic] any constitutional harm, either. [case citation omitted]
>
> Further, there is no evidence that Cmdr. Phelan acted with the requisite state of mind. Regarding Plaintiffs' Fourth Amendment claims, there is no evidence that Cmdr. Phelan intended to restrain Plaintiffs or otherwise acted unreasonably by deploying less lethal munitions against them. Except for the one incident on May 28, 2020, there is no evidence that Cmdr. Phelan directed the use of less lethal munitions against any Plaintiff. Additionally, there is no evidence that Cmdr. Phelan was personally involved in Rios', Sayers', or Klotzer's arrests, and even if there were, they were arrested for violating a lawful curfew. Regarding Plaintiffs' First Amendment claims, there is no evidence Cmdr. Phelan's actions were substantially motivated by Plaintiffs' speech. Cmdr. Phelan's motivation was to prevent crime, protect lives, and preserve property. And regarding Plaintiffs Sayers

11

> and Klotzer's selective enforcement claim, there is no evidence Cmdr. Phelan intended officers to arrest curfew violators for any other reason than that they were violating curfew, and there is no evidence he acted in bad faith based on an improper consideration. Therefore, Plaintiffs cannot prove Cmdr. Phelan violated their rights.

Dkt. 113, pp.28-29. While many of these contentions involve supporting a negative, it is Phelan's obligation to adequately raise the qualified immunity defense; and yet, here on summary judgment, he cites no deposition testimony, declarations, or other evidence to support his contentions. *See Tillmon v Douglas Cnty.*, 817 F. App'x 586, 588 (10th Cir. 2020) (unpublished) (defendants failed to adequately raise defense where "they did so in a single, six-sentence paragraph that discussed the law of qualified immunity and then concluded, *without supporting facts or arguments*, that all defendants were immune . . . ." (emphasis added)); *cf. Nichols v. Hurley*, 921 F.2d 1101, 1117 n.5 (10th Cir. 1990) (Ebel, J., dissenting) ("The plaintiffs' affidavits are as detailed as possible when trying to prove a negative. Surely, they are sufficient to establish a genuine dispute of material fact."); *Brunelle v. Coco's Italian Mkt.*, No. 3:20-CV-00982, 2022 WL 17640235, at *5 (M.D. Tenn. Dec. 13, 2022) ("The plaintiff did not provide or refer to *any* evidence in his Response[.] [H]e essentially complains that it is impossible for him to prove a negative, but he could have submitted a sworn and notarized affidavit or a declaration . . . to support his denials of the defendants' various statements in their [statement of material facts.]"); *Brown v. Warden of Kershaw Corr. Inst.*, No. 807-CV-03059-DCN-BHH, 2008 WL 11471096, at *2 (D.S.C. June 3, 2008) ("[A]lthough it is difficult to prove a negative, plaintiff has not

12

submitted even a sworn affidavit to establish that he did not receive the court's [order].").

"[Phelan's] mention of qualified immunity, without more, does not demonstrate [his] entitlement to it." *Est. of Ward*, 2023 WL 4744928, at *9. And to the extent his arguments regarding supervisory liability rely on Defendants' overall arguments in their motion, the Court has determined above that disputed issues of material fact exist for trial on Plaintiffs' claims. Thus, the Court does not rule on the merits of Phelan's claimed qualified immunity at this time, and Phelan's motion is denied in this regard for failing to adequately raise the qualified immunity defense.[1]

### 2. Plaintiffs' Motion

Plaintiffs argue the jury verdict in *Epps* results in Denver being issue precluded "from relitigating its failure to train its officers with respect to crowd management and on the use of less-lethal weapons and its deliberate indifference to this lack of training . . . ." Dkt. 114, p.1. Among other arguments, Defendants contend the Court cannot find that the issues in *Epps* are identical to the issues here. The Court agrees with Defendants.

Plaintiffs must satisfy all four elements of issue preclusion, which includes that the issues are identical. *See Park Lane*, 378 F.3d at 1136. But the specific issues

---

[1] The denial of the motion is not a ruling on the merits of Phelan's claim of qualified immunity. Nothing herein precludes Phelan from attempting to raise the defense at trial on a Rule 50 motion.

here are not necessarily identical to those presented in *Epps*, at least as far as the Court can discern.

The jury instruction(s) in *Epps* regarding Denver's failure to train instructed that "Plaintiffs must identify specific deficiencies in Denver's training or supervision that relate to the alleged constitutional violations of plaintiffs." Dkt. 114-6, p.22. While Plaintiffs here cite various testimony presented in *Epps* regarding deficiencies in Denver's training or supervision of its officers, they do not (nor can they) identify the specific deficiencies the jury found in reaching its verdict that Denver failed to train or supervise its officers.

For example, the *Epps* jury verdict form was divided into a series of check-boxes for each plaintiff. Dkt. 114-2, *e.g.,* p.6. For the failure to train claim, there were different boxes—one for a plaintiff's First Amendment claim alleging failure to train, and another for their Fourth Amendment claim alleging a similar failure. *Id.* Yet, for one of those plaintiffs, Ashlee Wedgeworth, the jury checked the box for failure to train for her First Amendment claim, but did *not* check the box for her Fourth Amendment failure to train claim. *Id.* Thus, the evidence the jury relied on to conclude a failure to train in one instance, but not the other, is unclear. Because the jury was not asked in *Epps* to make findings identifying the specific training or supervising failures of Denver's officers leading to liability, this Court is unable to find the issues before this Court and the *Epps* Court are identical for issue preclusion

14

purposes. Consequently, at a minimum, Plaintiffs have failed to carry their burden to demonstrate the necessary identity of issues and their motion is denied.

\* \* \*

For the reasons shared above, Defendants' Motion for Summary Judgment is DENIED and Plaintiffs' Partial Motion for Summary Judgment is also DENIED.

IT IS FURTHER ORDERED that the John and Jane Doe Defendants are hereby DISMISSED because there is no provision in the Federal Rules of Civil Procedure for naming fictitious or anonymous parties in a lawsuit; further, discovery is closed and Plaintiffs have not moved to amend their complaint to identify these fictitious persons. *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982); *Conyac v. Noonan*, No. 11-CV-02730-PAB-CBS, 2013 WL 4434369, at \*4 (D. Colo. Aug. 16, 2013); *see* Fed. R. Civ. P. 10(a) ("Every pleading must have a caption . . . [t]he title of the complaint must name all the parties[.]").

IT IS FURTHER ORDERED a Final Pretrial Conference is set for September 3, 2025, at 10:00 a.m. in Courtroom C201 before U.S. District Judge S. Kato Crews.  No later than August 18, 2025, the parties shall file the proposed final pretrial order. A WORD version of the proposed final pretrial order should also be emailed to crews_chambers@cod.uscourts.gov.  Parties shall refer to this Court's Standing Order for Civil Cases when preparing the proposed final pretrial order. Parties should be prepared to set a trial date within one to two months out from this conference. Lead counsel who will try the case must be in attendance.

DATED: May 23, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge